UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION



JAN 18 2022

Clerk, U.S. District Court
Texas Eastern

SHAWN LOUIS SUTTER,
     Plaintiff,

v.

UNITED STATES ATTORNEY GENERAL
MERRICK B. GARLAND;
BUREAU OF PRISONS
DIRECTOR MICHAEL CARVAJAL
TEXARKANA WARDEN S. SALMONSON;
COUNSELOR R. BYRAM; OFFICER BRUNNER;
CASE MANAGER ROBERSON;
ASSOCIATE WARDEN JACKSON;
ASSOCIATE WARDEN SANTIAGO;
TEXARKANA CAPTAIN JETT;
ASSISTANT SAFETY SUPERVISOR BECK;
ACTING SAFETY SUPERVISOR JOHNSON;
INFECTIOUS DISEASE SPECIALIST OGDEN;
COUNSELOR McCLAIN; &
COVID-19 CRISIS COORDINATOR GODWIN.

5:22 cv - 00008

---

## COMPLAINT

### I. JURISDICTION

Civil Rights complaint pursuant to 28 U.S.C. § 1331. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

### II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff Shawn Louis Sutter (hereinafter "Sutter"), pro se, has exhausted "all available" administrative remedies pursuant to 28 U.S.C. §1997e(a).

### III. PARTIES

1

1. Merrick B. Garland, U.S. Attorney,
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530

2. Michael Carvajal, BOP Director,
320 First Street, N.W.
Washington, D.C. 20534

3. S. Salmonson, Warden, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

4. R. Byram, Correctional Counselor, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

5. Corrections Officer Brunner, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

Roberson, Case Manager, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

Jackson, Associate Warden, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

8. Santiago, Associate Warden, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

9. Jett, Captain, FCI-Texarkana
4001 leopard Dr.
Texarkana, Texas 75501

10. Beck, Assistant Safety Supervisor, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

11. Johnson, Acting Safety Supervisor, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

12. Ogden, Nurse, Infections Disease Specialist, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

13. McClain, Correctional Counselor, FCI-Texarkana,
4001 Leopard Dr.
Texarkana, Texas 75501

14. Godwin, COVID-19 Crisis Coordinator, FCI-Texarkana
4001 Leopard Dr.
Texarkana, Texas 75501

(2)

IV. <u>STATEMENT OF CLAIM</u>

1. On November 27, 2021, Sutter arrived at FCI-Texarkana-Low for service of his 48 month sentence.

2. Beginning on November 27, 2021 to present, FCI-Texarkana-Low has not been complying with CDC guidelines nor BOP policy pertaining to the COVID-19 pandemic for social distancing, PPE access, disinfecting contaminated inmate cells and living quarters, etc....

3. On January 5, 2022, Sutter's cellmate Jenneth Schwartz tested positive for for COVID-19, and was quarantined in medical for four hours and than placed in charlie unit.

4. Sutter helped Mr. Schwartz down to medical on January 5, 2022 because BOP staff refused to provide him a wheel chair, even though Mr. Schwartz told BOP staff he was sick, weak, and dizzy.

5. On January 5, 2022, while Sutter was in medical helping Mr. Schwartz, medical staff tested Sutter for COVID-19.

6. Sutter's test results were negative for COVID-19.

7. Sutter was then ordered back to his unit to quarantine inside his cell.

8. When Sutter arrived back to his unit he requested that safety decontaminate his cell to remove the COVID-19 contamination that would be present because of inmate Schwartz living there.

9. Sutter was denied everyday beginning on January 5, 2022 to present to have his cell decontaminated pursuant to CDC guidelines and BOP policy pertaining to decontamination of COVID-19 contaminated areas.

10. Between January 5, 2022 until Sutter tested positive on January 10, 2022, Sutter was forced to eat, sleep and be quarantined inside his contaminated COVID-19 cell with all of Mr. Schwartz's COVID-19 contaminated sheets, blankets, & mattress etc....

11. On January 10, 2022, Sutter tested positive for COVID-19 because he was forced to eat, sleep and quarantine inside his COVID-19 contaminated cell.

12. Texarkana-Low properly only follows the proper CDC guidelines for COVID-19 decontamination procedures for administrative areas i.e., medical department, Captain's office, & Lt's office, etc....

13. As shown by Sutter's cell not being decontaminated after his cellmate Mr. Schwartz testing positive for COVID-19, caused Sutter to contract COVID-19.

14. On January 4, 2022, Sutter apprised Warden S. Salmonson and counselor McClain of his serious medical condition of being autoimmune/immunocompromised, that the CDC says causes poor outcomes of death if he contracts COVID-19.

15. Warden S. Salmonson and Counselor McClain apprised Sutter that his medical conditions were being taken seriously.

(4)

16. On January 5, 2022, Sutter apprised medical infectious disease specialist Ogden that he had a serious medical condition of being autoimmune/inmmunocompromised that the CDC says causes very poor outcomes or death if Sutter contracts COVID-19.

17. All defendant's owe Sutter a duty to ensure that cells are disinfected after an inmate tests positive for COVID-19.

18. Defendants violated Sutter's Eighth Amendment Right to Cruel and Unusual Punishment by failing to decontaminate his cell, directly causing Sutter to contract COVID-19.

19. On January 13, 2022, Sutter attempted to submit his BP-8½ informal resolution for these claims.

20. Sutter's unit officer called Counselor McClain and requested that he come and pick up and file Sutter's administrative remedy.

21. Counselor McClain apprised Sutter's unit officer that he was not going to walk to Sutter's unit to pick up or file his remedies.

22. Sutter stopped Case Manager Roberson at his unit door and handed her his administrative remedy to file.

23. Case Manager Roberson immediately handed Sutter back his administrative remedy. Stating that it's not her job to submit or file the.

24. Counsleor Byram and Officer entered Sutter's unit.

25. Sutter politely asked Counselor Byram if he could submit his administrative remedy.

26. Counselor Byram immediately grabbed Sutter's administrative remedy rudely from Sutter's hands and crumbled it up in a ball.

27. Sutter asked for his crumpled-up administrative remedy back.

28. Counselor Byram and officer Brunner refused and told Sutter he Sutter was "not allowed to file any administrative remedies and to sue him, just make sure you spell our names right!"

29. Sutter then asked Counselor Byram and Officer Brunner for a BP-9-10 & 11 forms.

30. Sutter then asked Counselor Byram and Officer Brunner both got in Sutter's face in a very hostile manner to intimidate Sutter, and they both again told Sutter that he was not getting the BP-9-10 or 11 forms because he was not allowed to file any administrative remedies at any level.

31. Sutter walked away because he was scared that Counselor Byram and officer Brunner were about to attack him if he tried any longer to obtain his remedy back or any remedy forms.

32. Inmate Springer and Inmate Schwartz walked up to Counselor Byram and officer Brunner.

33. Counselor Byram then took Inmate Springer's administrative remedies to file them.

34. Counselor Byram then took inmate Schwartz's stack of administrative remedies to file them.

35. Counselor Byram then looked through Schwartz's stack of remedies and removed an extra copy of Sutter's remedy that he had just balled up and to Springer and Schwartz that Sutter was not allowed to file any administrative remedies at any level.

## V. CLAIM ONE

All defendants violated Sutter's Eighth Amendment right to be free from Cruel and Unusual Punishment. The defendant's failed to follow any steps by the CDC guidelines or BOP policy pertaining to disinfecting and preventing the spreading of COVID-19.

Sutter sues for a monetary settlement in excess of five Million Dollars.

## VI. CLAIM TWO

All defendants violated Sutter's First Amendment Right to file Administrative Remedies. The defendants thwarted Sutter from being able to access the administrative remedy program by threats, harrasment, hostile force, and intimidation.

(7)

Sutter sues for a monetary settlement in excess of Five Million Dollars.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on this 13th day of January 2022.

Respectfully Submitted,

Shawn Sutter, #30906-018
Federal Correctional Institution-Low
P.O. BOX 7000
Texarkana, Texas 75505

---

1. I declare under penalty of perjury and the laws of the United States, pursuant to the prison mailbox rule, a pro se prisoner's pleadings are deemed to have been filed on that date that the prisoner submits the pleading to prison authorities for mailing. (Casuy v. Cain, 450 F.3d 601, 604 (5th Cir. 2006) (Citing Huston v. Lack, 487 U.S. 266 (1988).

# AFFIDAVIT

I, Shawn L. Sutter , herein "Affiant", residing at: Federal Correctional Institution, being duly sworn, depose, say and declare, by my signature that Affiant is competent to state the matters included in his affidavit, has knowledge of the facts, and declares that to the best of his knowledge, the statements made in his affidavit are true, correct, and not meant to mislead, and herein states:

On January 12, 2022 @ 11:00am I went to the unit officer and asked to see counselor McClain to turn in my BP-8½ administrative remedy for Eighth Amendment violations for COVID-19. I was told McClain said, he was not walking over here to the west side of the prison to pick up my administrative remedy.

At 12:00pm I stopped Case Manager Roberson and gave her my administrative remedy she looked at it and turned around and gave it back to me and said it was not here job to file my administrative remedy and walked off.

At 1:05pm Counselor Byran and Officer Brunner entered A03 Quarantine unit. I walked up to counselor Byran and asked him to file my BP-8½ and he immediately in an aggressive and hostile manner snatched the BP-8 out of my hand and crumbled it up into a ball. I asked him for it back and he told me I could not have it back because I am not allowed to file an administrative remedy. I than asked him for a BP-9-10 & 11, and he again told me that he was not going to give me and I was not allowed to file any administrative remedies. I than questioned him to why I was not allowed to file an administrative remedy he than approached me an an serious aggressive and hostile manner in close proximity to my face, i.e, within an inch & told me, "because he said so! and I wasn't going to do anything'about it." I than walked off because he intimidated to the point where I thought he was going to get physically assulted with Brunner assisting him.

I than watched inmate's Springer & Schwartz walk up to Byran and turn their administrative remedy's which he accepted. Byran asked inmate Schwartz if these were all of his remedy's and inmate schwartz said no and CCC Byran went through them and took out inmate Sutter's remedy and said he's not filing any remedy's.

This is a clear violation of my Constitutional Rights to redress the Government.

## VERIFICATION UNDER THE PENALTY OF PERJURY

I, Shawn Louis Sutter , over the legal age, do declare, verify, affirm, and/or state, under the penalty of perjury, that the foregoing is true, correct and complete to the best of my knowledge and belief pursuant to title 28 U.S.C. §1746.

Executed this 12th day of January ; 2022

_____
Signature of Affiant