UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION



FILED

JAN 1 9 2022

Clerk, U.S. District Court
Texas Eastern

SHAWN LOUIS SUTTER,
     Plaintiff,

v.

Case No.: 5:22cv 8

DEMAND FOR JURY TRIAL

UNITED STATES ATTORNEY GENERAL
MERRICK B. GATLAND;
BUREAU OF PRISONS DIRECTOR
MICHAEL CARVAJAL;
TEXARKANA WARDEN/CEO S. SALMONSON;
ASSOCIATE WARDEN PROGRAMS JACKSON;
ASSOCIATE WARDEN CUSTODY SANTIAGO;
SAFETY SUPERVISOR JOHNSON;
ASSISTANCE SAFETY SUPERVISOR BECK;
CLINICAL DIRECTOR DR. DANDAN HE;
INFECTIOUS DISEASE SPECIALIST OGDEN;
COVID-19 CRISIS COORDINATOR GODWIN;
NURSE BISHOP;
FCI TEXARKANA CAPTAIN JETT;
CASE MANAGER ROBERSON;
COUNSELOR R. SHANE BYRAM;
COUNSELOR McCLAIN;
OFFICER BRUNNER; and
HEALTH SERVICES ADMINISTRATOR CDCR HASKINS,
          DEFENDANT'S

---

## AMENDED VERIFIED COMPLAINT

---

## COMPLAINT

### I. JURISDICTION

(A).Civil Rights complaint pursuant to 28 U.S.C. §1331 Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Against all defedant's in their individual capacities; (B). §1331 Federal Question; Official Capacities; (C). §1361 Official Capacities.

### II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff Shawn Louis Sutter (hereinafter "Sutter"), pro se, has exhausted "all available" administrative remedies pursuant to 28 U.S.C. §1997e(a).

1

## III. PARTIES

### A. PLAINTIFF

1. SHAWN LOUIS SUTTER
   Fed. Reg. No. 30906-018
   FCI-TEXARKANA
   P.O. BOX 7000
   TEXARKANA, TEXAS 75505

### B. DEFENDANT'S: Defendant's are being sued in their Individual & Official Capacities

1. Merrick B. Garland, U.S. Attorney,
   950 Pennsylvania Ave., NW.
   Washington, D.C. 20534

2. Michael Carvajal, BOP Director,
   320 First St., NW.
   Washington, D.C. 20534

3. S. Salmonson, Warden/CEO FCI Texarkana
   4001 Leopard Drive
   Texarkana, Texas 75501

4. Jackson, AW Programs
   4001 Leopard Drive
   Texarkana, Texas 75501

5. Santiago, AW Custody
   4001 Leopard Drive
   Texarkana, Texas 75501

6. Johnson, Safety Supervisor
   4001 Leopard Drive
   Texarkana, Texas 75501

7. Beck, Assistant Safety Supervisor
   4001 Leopard Drive
   Texarkana, Texas 75501

8. He, Dandan, Dr. Clinical Director
   4001 Leopard Drive
   Texarkana, Texas 75501

9. Ogden, Infectious Disease Specialist
   4001 Leopard Drive
   Texarkana, Texas 75501

10. Godwin, COVID-19 Crisis Coordinator
    4001 Leopard Drive
    Texarkana, Texas 75501

11. Bisop, Nurse
    4001 Leopard Drive
    Texarkana, Texas 75501

2

12. Jett, Captain
    4001 Leopard Drive
    Texarkana, Texas 75501

13. Roberson, Case Manager
    4001 Leopard Drive
    Texarkana, Texas 75501

14. Byram, R. Shane Counselor
    4001 Leopard Drive
    Texarkana, Texas 75501

15. McClain, Counselor
    4001 Leopard Drive
    Texarkana, Texas 75501

16. Brunner, Correctional Officer
    4001 Leopard Drive
    Texarkana, Texas 75501

17. Haskins, CDCR, Health Services Administrator
    4001 Leopard Drive
    Texarkana, Texas 75501

## IV. STATEMENT OF CLAIM

1. On November 27, 2021, Sutter arrived at FCI-Texarkana-Low (hereinafter "Texarkana") for service of his 48 month sentence for violation of Supervised Release.

2. Beginning on November 27, 2021, to present, Texarkana has not been complying with CDC guidelines nor BOP policy pertaining to the COVID-19 pandemic for social distancing for inmates, providing clean face masks for inmates, PPE access for inmates, disinfecting contaminated/infected inmate cells and living quarters, etc.

3. On January 5, 2022, Sutter assisted his cellmate Kenneth Schwartz #39564-019 to medical because he was deathly ill, and BOP staff consistently refused to help Mr. Schwartz to medical. And even refused Mr. Schwartz's request for a wheelchair after he apprised these BOP staff that he was very weak and dizzy.

(3)

4. On January 5, 2022, Sutter's cellmate Kenneth Schwartz tested positive for COVID-19, and was quarantined in medical for four hours and then placed in quarantine in Charlie unit.

5. After Mr. Schwartz tested positive for COVID-19, medical staff then tested Sutter for COVID-19 because Sutter was Mr. Schwartz's cellmate.

6. Sutter's test results were negative for COVID-19.

7. On January 5, 2022, after Sutter tested negative for COVID-19, defendant's, Dr. He, Ogden and Bishop ordered Sutter back to his unit to quarantine inside his COVID-19 contaminated cell.

8. Sutter before leaving Medical to be quarantined inside his COVID-19 contaminated cell, apprised defendant's Dr. He, Ogden and Bishop that his cell needed to be decontaminated of COVID-19 because inmate Schwartz's contaminated bedding, clothing etc... was still inside Sutter's cell.

9. Defendant's Dr. He, Ogden and Bishop ignored Sutter's request to have safety and/or appropriate BOP departments and personal to have Sutter's call decontaminated pursuant to CDC guidelines and BOP Policy pertaining to decontaminating COVID-19 contaminated inmate cells and living quarters to prevent the spread of COVID-19 in a correctional setting.

10. Defendant's Garland, Carvajal, Salmonson, Jackson, Santiago, Johnson, Beck, He, Ogden, Godwin, Bishop, Jet, Roberson, Byram, McClain, Brunner, and Haskins; ordered and inforced Sutter to be quarantined inside his COVID-19 cell due to Sutter's cellmate Mr. Schwartz testing positive for COVID-19.

11. On January 5, 2022, after all defendants ordered Sutter to be quarantined inside his contaminated COVID-19 cell, Sutter again requested that defendants decontaminate his cell pursuant to CDC guidelines and BOP policy for decontamination of COVID-19 infected cells and areas due to Mr. Schwartz testing positive for COVID-19.

12. Sutter was denied by all defendants everyday beginning on January 5, 2022, to present, to have his cell decontaminated pursuant to CDC guidelines and BOP policy pertaining to decontamination of COVID-19 contaminated areas.

13. All defendants are required to file reports up the chain of command pursuant to COVID-19 to apprise defendants U.S.A.G. Garland and Defendant BOP Director Carvajal, of every institutional quarantines and decontamination of infected COVID-19 inmate cells and living areas; to be in compliance of CDC guidelines and BOP Policy of decontamination of contaminated/infected inmate cells and living areas to prevent the spread of COVID-19 in a correctional setting.

14. On January 10, 2022, Sutter tested positive for COVID-19 because he was forced to eat, sleep, and be quarantined inside his contaminated COVID-19 cell with all of Mr. Schwartz's COVID-19 contaminated sheets, blankets, mattress, etc.

15. Defendants only follow proper CDC guidelines and BOP policy for COVID-19 decontamination procedures for administration prison areas i.e., medical department, Captain's Office, Lt. Office, etc.

16. As Shown, defendants failure to decontaminate Sutter's cell pursuant to CDC guidelines and BOP policy, after inmate Schwartz tested positive, directly caused Sutter to contract COVID-19.

17. On January 4, 2022, Sutter apprised defendants Warden Salmonson and Counselor McClain that Sutter had contracted COVID-19 four (4) times prior and of his serious medical condition of being autoimmune/immunocompromised. And, that the CDC days this serious medical condition causes very poor outcome of death if Sutter contacts COVID-19.

18. Defendants Warden Salmonson and Counselor McClain assured Sutter that his medical conditions were being taken serious.

19. On January 5, 2022, Sutter apprised defendants He, Ogden and Bishop that he had contracted COVID-19 4 times prior and had a serious medical condition of being autoimmune/immunocompromised due to his hypothyroidism that the CDC days causes very poor outcomes or death if Sutter contracts COVID-19.

20. All defendants acted deliberately indifferent to Sutter's health and safety by failing to have Sutter's cell decontaminated of COVID-19, causing Sutter to contract COVID-19.

21. All defendants acted deliberately indifferent to Sutters health and safety by ordering Sutter to eat, sleep and quarantine in his COVID-19 contaminated cell causing Sutter to contract COVID-19.

22. Beginning on January 8, 2022, to present, Sutter has been addressing his COVID-19 symptoms to defendant Bishop and other medical staff everyday when they enter Sutter's quarantined unit.

23. Defendant Bishop and other medical staff are falsifying Sutter's medical records by alleging Sutter is asymptomatic to prevent a real record of the real COVID-19 numbers with symptoms and to prevent Sutter from proving a physical injury in Court. This is a violation of 18 U.S.C. §1001.

24. Sutter has been Suffering severe symptoms from contracting COVID-19. Coughing, cold sweats, congestion, severe headaches, bone aches, extremely high blood pressure, dizziness, blurred vision, diarrhea, blood in urine, and chest pains.

25. On January 15, 2022, Nurse Vallejo was the first time that Sutter's COVID-19 symptoms were addressed.

26. Nurse Vallejo took Sutter's bllod pressure and discovered that Sutter's blood pressure was 199/140.

27. Sutter, to date, still has not been seen by medical Dr. He for his medical conditions.

28. All defendant's owe Sutter a duty to ensure that cells are disinfected after an inmate tests positive for COVID-19.

29. All defendants violated Sutter's Eighth Amendment Right to Cruel & Unusual Punishment by failing to decontaminate his cell, directly causing Sutter to contract COVID-19.

30. On January 12, 2022, Sutter attempted to submit his BP-8½ informal resolution for these claims.

31. Sutter's unit officer called Counselor McClain and requested that he come and pick up and file Sutter's administrative remedy.

32. Counselor McClain apprised Sutter's unit officer that he was not going to walk to Sutter's unit to pick up or file his remedies.

33. Sutter stopped Case Manager Roberson at his unit door and handed her his administrative remedy to file.

34. Case Manager Roberson immediately handed Sutter back his administrative remedy. Stating that it's not her job to submit or file his administrative remedies.

35. Counselor Byram and officer Brunner entered Sutter's unit.

36. Sutter politely asked Counselor Byram if he could submit his administrative remedy.

37. Counselor Byram immediately grabbed Sutter's administrative remedy from Sutter's hands hitting Sutter's hand and crumbled it up in a ball. This is a violation of 18 U.S.C. §113 assault against a person.

38. Sutter asked for his crumpled-up administrative remedy back. By crumpling up my administrative remedy he essentially confiscated it and didn't return it.

(7)

39. Counselor Byram and officer Brunner refused and told Sutter he Sutter was "not allowed to file any administrative remedies and to sue [him], just make sure you spell our names right!"

40. Sutter then asked Counselor Byram and Officer Brunner for a BP-9, BP-10, & BP-11 forms.

41. Counselor Byram and Officer Brunner both got in Sutter's face in a very hostile manner to intimidate Sutter, and they both again told Sutter that he was not getting the BP-9, BP-10, or BP-11 forms because he was not allowed to file any administrative remedies at any level.

42. Sutter walked away because he was scared that Counselor Byram and Officer Brunner were about to attack him if he tried any longer to obtain his remedy back or any remedy forms.

43. Inmate Springer and Inmate Schwartz walked up to Counselor Byram and Officer Brunner.

44. Counselor Byram then took Inmate Springer's administrative remedies to file them.

45. Counselor Byram then took inmate Schwartz's stack of administrative remedies to file them.

46. Counselor Byram then looked through Schwartz's stack of remedies and removed an extra copy of Sutter's remedy that he had just balled up and said to Springer and Schwartz that Sutter was not allowed to file any administrative remedies at any level.

47. January 10, 2022, at present defendants are responsible for cross contamination of inmates infection hundreds with COVID-19 by moving inmates that are positive with COVID-19 into quarantine, and moving uninfected inmates in the cells just vacated by infected inmates who were told to leave their mattress' for the uninfected inmates from their bunks and living spaces.

48. Thus, causing medically vulnerable inmate to contract COVID-19 a few days later as Sutter did - due to defendants not following decontamination protocols directed by the CDC. On January 4, 2022.

49. Defendant Warden Salmonson informed Sutter that pursuant to the COVID-19 pandemic and Sutter's medical condition of being autoimmune/immunocompromised, which caused Sutter to previously contract COVID-19 four (4) times, he would: (1) consider Sutter for RRC Placement with 30 months left on his sentence pursuant to 18 U.S.C. §3621(b); and (2) he would consider Sutter for Compassionate Release pursuant to U.S.A.G.'s April 3, 2020 memorandum to BOP director Carvajal that authorizes compassionate release pursuant to the First Step Act (FSA) 2018 and 18 U.S.C. §3582(c)(1)(A)(i).

50. To date, defendant Warden Salmonson has not considered Sutter for any thing that he promised.

51. Due to defendant Counselor Byram denying Sutter access to available administrative remedy program and denying Sutter access to BP-8, BP-9, BP-10, & BP-11 forms, and Sutter being on COVID-19 quarantine for testing positive for COVID-19, Sutter's only available remedy is this complaint to the Honorable Court.

52. On January 14, 2022, Byram, again refused to accept Sutter's BP-8, and denied Sutter a BP-9, BP-10, & BP-11 form when Sutter asked him for them.

53. On January 14, 2020, Byram, after refusing to take Sutter's BP-8, and refused to provide Sutter a BP-9, BP-10, & BP-11 forms; Byram accepted and provided Inmate Springer & Inmate Schwartz with administrative remedies to submit for consideration.

54. Sutter asserts no matter what steps are taken, due to his underlying serious health conditions, there is no communal holding facility where he could be incarcerated during the COVID-19 pandemic that would be Constitutional.

55. Sutter asserts that on Saturday, Sundays and legal holidays, defendants do not do: (1) the required daily temperature checks; (2) walk throughs to see who in quarantine have symptoms; (3) do not do the daily disinfection of common areas to prevent the spread of COVID-19.

56. Defendants have ignored and been deliberately indifferent, to the known urgency to consider Sutter for home confinement, particularly Sutter being most vulnerable to severe illness or death if he contracts COVID-19 again due to being auto-immune and other medical issues, in failing to make prompt and meaning ful use of home confinement and disregarding Sutter's medical conditions in determining eligibility for home confinement.

57. Defendants are demonstrating that no Texarkana inmates' risk factors for severe illness or death from COVID-19 are being evaluated for requests for compassionate release.

58. Defendant's failure to make reasonable and prompt use of compassionate release to reduce the inmate population is buttressed by the fact that evidence demonstrates the number of inmates at Texarkana is over designed capacity for this facility.

59. Defendant's failure to take reasonable measures to promptly review and grant requests for compassionate release on behalf of Sutter or Texarkana inmates to reduce the inmate population at Texarkana further demonstrates defendants deliberate indifference to inmates' risk of severe illness or death from COVID-19.

(10)

60. Therefore, based on counselor Byram's thwarting, hindering, intimidating and assaulting Sutter chill's his ability to use the administrative remedy program. This makes the Administrative Remedy Program unavailable to Sutter. Sutter has brought all his grievances to this Honorable Court.

## V. CLAIM ONE

All defendants in their individual capacities violated Sutter's Eighth Amendment right to be free from Cruel and Unusual Punishment. The defendant's failed to follow any steps by the CDC guidelines or BOP policy pertaining to disinfecting and preventing the spread of COVID-19. Directly causing Sutter to contract COVID-19.

Sutter sues for a monetary settlement in excess of Five Million Dollars, including but not limited to: future medical costs and wages, due to deteriorating and debilitating medical conditions after contracting COVID-19.

## VI. CLAIM TWO

All defendants in their individual capacities violated Sutter's First Amendment Right to redress the government by filing the administrative remedies. The defendants thwarted Sutter from being able to access the administrative remedy program by threats, harassment, hostile force, and intimidation and assault.

Sutter sues for a monetary settlement in excess of Five Million Dollars.

## VII. INJUNCTIVE RELIEF

Sutter requests this Honorable Court to order the following injunctive relief against all defendants in their official capacities:

1. Order defendants to provide N95 face masks to inmates-instead of just BOP staff;

2. Order defendants to stop cross contaminating the inmate population by ordering defendants to decontaminate inmates cells and areas after infected inmates are tested and found positive;

3. Order defendants to stop cross contaminating by quarantining inmates in their units instead of moving them from unit to unit and back, this is causing the spread of COVID-19 within the unifected;

4. Order defendants to consider Sutter pursuant to U.S.A.G.'s memorandum that directs defendants to send high risk inmates-that the CDC says would have poor outcomes if they contract COVID-19 on home confinement.

5. Order defendants to consider Sutter for RRC placement with 30 months remaining on his sentence pursuant to 18 U.S.C. §3621(b);

6. Order defendants to have Sutter's medical records corrected to properly state Sutter's symptoms form COVID-19 while he is in quarantine beginning on January 5, 2022 to present;

7. Order defendants to refer all violations of federal law for falsifying Sutter' medical records to the FBI & OIG, or other appropriate agency for review and prosecution;

8. Order defendants to refer Counselor Byram's assault on Sutter to the FBI, OIG, or other appropriate agency for review and prosecution.

9. Order defendants to comply with CDC guidelines and BOP policy pertaining to decontamination of COVID-19 contaminated cells and inmate living areas.

10. Ordered defendants to provide Counselor Byram and Correctional Officer Brunner anger management and communication with inmates classes or equivalent;

11. Order defendants to impose disciplinary actions against all defendants and make a notation in their employee file concerning these incidents for violating Sutter's rights, CDC guidelines and BOP policies.

(12)

I declare under penalty of perjury that the forgoing is true and correct.

Executed on this 14th day of January 2022.[1]

Respectfully Submitted,

Shawn Louis Sutter, #30906-018
Federal Correctional Institution-Low
P.O. BOX 7000
TEXARKANA, TEXAS 75505

---

1. Pursuant to the Prison mailbox rule, a pro-se prisoner's pleadings are deemed to have been filed on that date that the prisoner submits the pleading to prison authorities for mailing. (Casuy v. Cain, 450 F.3d 601, 604 (5th Cir. 2006) (citing Huston v. Lack, 487 U.S. 266 (1988).

(13)